** Summary ** CENTRAL RECORD OF VOTER REGISTRATION SUBJECT TO PUBLIC INSPECTION The Central Record is a public record and thus subject to public inspection under 51 O.S. 24 [51-24] (1971) and 26 O.S. 93.8 [26-93.8] (1971). The Legislature directed the county election board to "safeguard" these records though they be open to the public. This opinion in no way should hamper or otherwise affect the proper control and supervision of these documents by the county election boards. The Attorney General has your request for an opinion wherein you outline in part the following set of facts: "This office has had numerous inquiries concerning the availability of the Central Record of voter registrations for public inspection." In addition, there has been apprehension from various counties that these records will be lost or misplaced and therefore nullify their intended use as a duplicate copy of the precinct records used to cross-check voter registrations. Based on the facts related to the circumstances under which you requested this opinion, you ask the following questions: 1. Is the Central Record a public record under the provisions of 51 O.S. 24 [51-24] (1971) and thus subject to public inspection? 2. If not, is it unlawful for the secretary of the county election board to make the Central Record available for public inspection, subject to reasonable safeguards? Title 51 O.S. 24 [51-24] (1971) provides: "It is hereby made the duty of every public official of the State of Oklahoma, and of its subdivisions, who are required by law to keep public records pertaining to their said office, to keep the same open for public inspection for proper purposes, at proper times and in proper manner, to the citizens and taxpayers of this state, and its subdivisions, during all business hours of the day; provided, however, the provisions of this act shall not apply to income tax returns filed with the Oklahoma Tax Commission, or other records required by law to be kept secret." Also pertinent to this opinion is 26 O.S. 93.8 [26-93.8] (1971) which provides: "Registration forms to be kept in Precinct Record and Central Record — Cancellation of registration forms. — These Registration Forms shall be kept in two (2) records, one (1) to be known as the Precinct Record and the other to be known as the Central Record. The forms shall be of a loose-leaf record style and the original form shall be filed alphabetically, by name of the registrant, in the Precinct Record, which record shall be of a portable loose-leaf binder type that will allow the contents to be locked and shall contain alphabetical tab indexes. The key to said binder shall remain in the possession of the secretary of the county tered (sic) electors who are currently eligible to vote election board at all times. "The duplicate Registration Forms of all regis- (sic) shall be filed in the Central Record and shall be placed in alphabetical order. The original Registration Forms of those voters whose registration has been cancelled as prescribed by law shall be removed from the precinct record and shall be marked "cancelled" giving the date and the reason for the cancellation. Such Registration Forms shall be placed in a separate file in alphabetical order and shall remain in the possession of the County Election Board for a period of two (2) years. After said two-year period, canceled (sic) forms may be disposed of by the County Election Board. The duplicate Registration Forms of voters so canceled (sic) shall be removed from the Central Record and destroyed. An elector so canceled (sic) must register as a new voter before he can again become a qualified elector. "The Central Record shall be kept in the office of the county election board at all times in a place and in such manner as to be properly safeguarded. The Precinct Record shall likewise be be kept in the office of the county election board, except as otherwise provided herein, and shall be open to public inspection at all times, subject to reasonable safeguards." (Emphasis added) It is a well settled canon of statutory construction that legislative intention is to be first sought in the language of the statute itself, and if the intention is then plainly expressed, it must be followed without further inquiry. Special Indemnity Fund v. Harold, Okl., 398 P.2d 827. It appears clear that the intention of the Legislature in enacting 51 O.S. 24 [51-24] (1971) was to require every public official of the State of Oklahoma required by law to keep public records, to make those records available for public inspection subject to the limitations contained within the statute as to purpose, time and manner. The only remaining question would be whether or not the specific statute, 26 O.S. 93.8 [26-93.8] (1971) would control over the general statute above cited. It appears clear that 26 O.S. 93.8 [26-93.8] (1971) is intended to speak to the keeping of registration forms in both the Precinct Record and the Central Record. In doing so the Legislature obviously intended to speak of the records as interdependent and interchangeable as to the laws governing their use and not to be considered separate as to the method of keeping and controlling these records. This is particularly evident in the last paragraph of the statute which speaks to the place and manner of keeping the records. Any doubt as to the legislative intent is resolved by considering the two above cited statutes together since they relate to the same subject matter. Statutes which relate to the same subject matter or object are in "pari materia" and should be construed together to give effect as a whole to the legislative intent. State ex rel Marland v. Phillips Petroleum Company et al,189 Okl. 629, 118 P.2d 621. It is therefore the opinion of the Attorney General that your first question be answered in the affirmative in that the Central Record is a public record and thus subject to public inspection under 51 O.S. 24 [51-24] (1971) and 26 O.S. 93.8 [26-93.8] (1971). It should also be noted that the Legislature directed the county election board to "safeguard" these records though they be open to the public. This opinion in no way should hamper or otherwise affect the proper control and supervision of these documents by the county election boards. It is further the opinion of the Attorney General that your second question need not be answered in view of the affirmative answer to your first question. (Robert H. Mitchell) ** SEE: OPINION NO. 79-011 (1979) **